IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REBECCA RUNYAN BRYAN,   :

    Plaintiff,   :

vs.   CA 06-0225-C

                    :

LEXINGTON INSURANCE
COMPANY and ORANGE   :
BEACH INSURANCE AGENCY,

                    :

    Defendant.

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on plaintiff's motion to remand (Doc. 7),

defendant Lexington Insurance Company's brief and response to the motion

to remand (Doc. 15), and defendant Orange Beach Insurance Agency's joinder

in Lexington's response (Doc. 16). The parties have consented to the exercise

of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all

proceedings, including disposition of this motion. (Docs. 18 & 19 ("In

accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the

parties in this case consent to have a United States Magistrate Judge conduct

any and all proceedings in this case, including the trial, and order the entry of

a final judgment, and conduct all post-judgment proceedings.")) Upon

consideration of the contents of the briefs, all pertinent materials submitted in

support of those briefs, and the arguments of counsel on June 29, 2006, the Court **GRANTS** plaintiff's motion to remand (Doc. 7) and hereby remands this cause to the Circuit Court of Baldwin County, Alabama from whence it came.

### FINDINGS OF FACT

1.       On March 6, 2006, plaintiff, Rebecca Runyan Bryan, filed a five-count complaint in the Circuit Court of Baldwin County, Alabama, against defendants Lexington Insurance Company (hereinafter, "Lexington") and Orange Beach Insurance Agency (hereinafter, "Orange Beach") arising out of events leading up to her purchase of insurance from Lexington, through Orange Beach, and her attempts to collect proceeds under that policy following Hurricane Ivan. (Doc. 1, COMPLAINT) The complaint reads, in pertinent part, as follows:

### COUNT ONE
### Breach of Contract

1.       That Plaintiff, Rebecca Runyan Bryan, is a resident citizen of Baldwin County, Alabama, and is over the age of nineteen (19) years.

2.       That Defendant, Lexington Insurance Company, is a foreign corporation having its principal place of business in Boston, Massachusetts, and doing business by agent or otherwise in the State of Alabama.

2

3.      That Defendant, Orange Beach Insurance Agency, is, on information and belief, an Alabama corporation having its principal place of business in Baldwin County, Alabama.

4.      That on or about July 14, 2004, the Defendant Lexington Insurance Company issued a policy of property insurance insuring the Plaintiff's dwelling in Orange Beach, Alabama, a copy of which is attached hereto as Exhibit "A".

5.      That the Plaintiff is the owner of said policy.

6.      That on or about the 16th day of September, 2005 (sic), the Plaintiff's home was damaged as a result of windstorm during Hurricane Katrina (sic).[1]

7.      That Defendant Lexington Insurance Company was given timely notice of said loss and Plaintiff made a claim under the policy.

8.      Defendant Lexington Insurance Company has refused to pay the Plaintiff the amount due under the said policy.

WHEREFORE  Plaintiff  demands  judgment  for compensatory damages against Defendant Lexington Insurance Company in an amount exceeding the jurisdictional limits of the court, plus interest and costs, together with such further, other, or different relief as the Court may deem proper and just.

## COUNT TWO
## Bad Faith Denial of Insurance Claim

9.      Plaintiff realleges the allegations and averments set forth in paragraphs one through eight above and incorporates the same as if set out here in their entirety.

---

[1]      The parties have stipulated that plaintiff's home was damaged by Hurricane Ivan which made landfall on September 16, 2004. (*See* Doc. 15, Exhibit A, Affidavit of Kevin McCarron, at 2)

10.     That the Defendant Lexington Insurance Company has intentionally refused to pay the Plaintiff's claim under said policy and denied the same without lawful jurisdiction.

11.     That said Defendant's refusal to pay said claim was not based upon a reasonably legitimate, arguable, or debatable reason.

12.     That the Defendant knew there was no legitimate, arguable, or debatable reason to deny the claim, when the Defendant refused to pay said claim.

13.     That Defendant intentionally failed to determine whether or not there was any lawful basis for its refusal to pay said claim.

14.     That Defendant Lexington intentionally or recklessly failed to properly investigate the Plaintiff's claim and failed to subject the results of said investigation to a reasoned and informed evaluation and review; and, moreover, the Defendant acted with reckless indifference to facts and proof submitted to it by the Plaintiff.

15.     That the Defendant acted in bad faith in refusing to pay said claim and in the investigation thereof.

16.     That Plaintiff claims punitive damages of the said Defendant.

WHEREFORE Plaintiff demands judgment against Defendant for compensatory and punitive damages in an amount exceeding the jurisdictional limits of this Court, plus costs, together with such further, other, or different relief as the Court may deem proper and just.

## **COUNT THREE**
### **Negligence**

4

17.     Plaintiff realleges the allegations and averments set forth in paragraphs one through sixteen above and incorporates the same as if set out here in their entirety.

18.     Defendant, Orange Beach Insurance Agency, was contacted by the Plaintiff concerning the procurement of a policy of property insurance.

19.     That Defendant Orange Beach Insurance Agency procured said policy of property insurance on behalf of the Plaintiff, said policy was originally issued on or about July 14, 1997, and reissued each subsequent year until July 14, 2004.

[20].   **That Defendant Orange Beach Insurance Agency negligently failed to inform the Plaintiff** that Lexington Insurance Company would not pay the amount she was entitled to receive under the subject policy if her home was damaged by both wind and flood; and, **that the Plaintiff was under insured in the even[t] the subject dwelling was destroyed by flood**.

[21].   As a proximate result of the Defendant Orange Beach Insurance Agency's said negligence, Plaintiff has suffered damages.

[22].   That at the time of the acts or omissions complained of herein above, Defendant Orange Beach Insurance Agency was acting in its own capacity and/or as the agent of the Defendant Lexington Insurance Company.

WHEREFORE Plaintiff demands judgment against Defendants in an amount exceeding the jurisdictional limits of this Court, plus costs, together with such further, other, or different relief as the Court may deem proper and just.

## COUNT FOUR
### Wantonness

[23].   Plaintiff realleges the allegations and averments set forth in paragraphs one through twenty-one (sic) above and incorporates the same as if set out here in their entirety.

[24].   That Defendant Orange Beach Insurance Agency wantonly failed to inform the Plaintiff that Lexington Insurance Company would not pay the amount she was entitled to receive under the subject policy if her home was damaged by both wind and flood; and, that the Plaintiff was under insured in the even[t] the subject dwelling was destroyed by flood.

[25].   As a proximate result of the Defendant Orange Beach Insurance Agency's said wantonness, Plaintiff has suffered damages.

[26].   That at the time of the wanton conduct complained of herein above, Defendant Orange Beach Insurance Agency was acting in its own capacity and/or as the agent of the Defendant Lexington Insurance Company.

WHEREFORE Plaintiff demands judgment against Defendants for compensatory and punitive damages in an amount exceeding the jurisdictional limits of this Court, plus costs, together with such further, other, or different relief as the Court may deem proper and just.

## COUNT FIVE
## Fraudulent Suppression

[27].   Plaintiff realleges the allegations and averments set forth in paragraphs one through twenty-five above and incorporates the same as if set out here in their entirety.

[28].   That Defendant Orange Beach Insurance Agency knew or should have known at the time of the reissuance of the policy as set forth herein above that the Defendant Lexington Insurance Company would seek to deny coverage and/or refuse to pay the Plaintiff the amount she was entitled to under the said

6

policy in the event the subject dwelling was damaged by both wind and flood as is common in the region the subject property is located.

[29].   That Defendant Orange Beach Insurance Agency, with notice that the Plaintiff was relying on the representations to her concerning the policy of insurance, failed to inform the Plaintiff that the Defendant Lexington Insurance Company would seek to deny coverage and/or refuse to pay the Plaintiff the amount she was entitled to under the said policy in the event the subject dwelling was damaged by both wind and flood as is common in the region the subject property is located.

[30].   That said Defendant's failure to so inform the Plaintiff constitutes fraudulent suppression pursuant to ALA. CODE §6-5-102 (Repl. 1993).

WHEREFORE Plaintiff demands judgment for compensatory and punitive damages in an amount exceeding the jurisdictional limits of this Court, plus costs, together with such further, other, or different relief as the Court may deem proper and just.

(*Id.* at 1-7, ¶¶ 1-30 (emphasis supplied))

2.     It is apparent from the face of the complaint that Bryan is a resident citizen of Alabama as is defendant Orange Beach. (*Id.* at 1, ¶¶ 1 & 3) Defendant Lexington is a Delaware corporation having its principal place of business in that state of Massachusetts. (Doc. 1, at ¶ 4; *see also id.*, COMPLAINT, at ¶ 2) Defendant Lexington removed the action to this Court on April 10, 2006 and therein alleges diversity of citizenship based upon the alleged fraudulent joinder of defendant Orange Beach. (Doc. 1, NOTICE OF

7

REMOVAL, at ¶ 7 ("Orange Beach Insurance Agency, Inc. has been **fraudulently joined** to defeat federal diversity jurisdiction. There is no possibility, given the facts stated in the complaint, that **plaintiff can recover against Defendant Orange Beach Insurance Agency, Inc. under the theories of recovery alleged in the complaint or any conceivable claim which could be properly joined in this action**. Thus, Orange Beach Insurance Agency, Inc. must be disregarded in determining the existence of diversity jurisdiction.") (emphasis supplied))

3.      Plaintiff's motion to remand was filed on May 9, 2006 (Doc. 7) and, quite naturally, therein plaintiff addressed the sole fraudulent joinder issue raised in the removal petition which, as aforesaid, was Lexington's contention that plaintiff cannot recover "**under the theories of recovery alleged in the complaint or any conceivable claim which could be properly joined in this action**." (*See id.*, at ¶ 7 ("[I]t would appear that the removing party's position is that **negligent/wanton procurement for failure to procure adequate insurance** and fraudulent suppression concerning the coverage actually procured and the scope of the various coverages in the applicable policies are not cognizable in the law of the State of Alabama. The Alabama Courts have long recognized causes of action against agents for applicants or insureds for

8

such acts or omissions as alleged in the Complaint.") (emphasis supplied))

4.    On June 6, 2006, the removing defendant, in its brief and response to plaintiff's motion to remand, argued not only that Orange Beach had been fraudulently joined to defeat diversity jurisdiction (Doc. 15, at 2-5) but, as well, spent an equal amount of space in its brief arguing for the first time that the claims asserted against Orange Beach were fraudulently misjoined with unrelated claims asserted against Lexington (*id*. at 5-9).[2]

5.    Attached to Lexington's brief and response to the motion to remand is the affidavit of Kevin McCarron. (Doc. 15, Exhibit A)

> My name is Kevin McCarron and I am the President of McCarron Insurance Group, Inc., an Alabama Corporation, with its principal place of business in the City of Orange Beach, Alabama. McCarron Insurance Group, Inc. is the successor company to Orange Beach Insurance Agency, a defendant in this action. As a previous employee of Orange Beach Insurance Agency and President of McCarron Insurance Group, Inc., I have personal knowledge or knowledge from books, records or research to the facts attested to below.

---

[2]    The Court construes the defendant's response to the plaintiff's remand motion as an amendment of its stated grounds for removal which is allowable. *See* 14C C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3733, at 358 (3d ed. 1998) ("[T]he cases indicate that the notice may be amended only to set out more specifically the grounds for removal that already had been stated, albeit imperfectly, in the original notice."). "Although the new text of Section 1446(a) is designed to make the statement of the grounds for removal simpler, there is no question that the notice must make the basis for the federal court's exercise of removal jurisdiction clear and contain enough information so that the district judge can determine whether removal jurisdiction exists." *Id*. at 354.

I am aware that for several years plaintiff, Rebecca Runyon Bryan, purchased insurance on the relevant property from Orange Beach Insurance Agency. For the three (3) years previous and leading to the event of September 16, 2004 (Hurricane Ivan) the insurance contract was written with Lexington Insurance Company. For 2002 the policy was effective 7-14-02, for 2003 the policy was effective 7-14-03, and for 2004 the policy was effective 7-14-04. **The insurance contracts were written by Lexington Insurance Company, a surplus lines insurance carrier, through a surplus lines insurance broker**. The contracts since 7-14-02 were LE 0533050 01, LE 0533050 02, and LE 0533050 03. The terms, conditions and coverages of the contracts were the same for the three (3) years. The relevant contract for this loss is LE 0533050 03, which would have been the Lexington Insurance Company contract effective 7-14-04 and expiring 7-14-05. I have inquired of the surplus lines broker in the course of my business and have been informed that the policy for 2002 was mailed to Orange Beach Insurance Agency on June 26, 2002, the policy for 2003 was mailed to Orange Beach Insurance Agency on July 15, 2003, and the insurance policy for 2004 was mailed to Orange Beach Insurance Agency on July 1, 2004. The insurance contracts would have been immediately passed on by Orange Beach Insurance Agency to the insured so that they would be in the insured's possession, following receipt by Orange Beach Insurance Agency.

**Orange Beach Insurance Agency was not a Lexington Insurance Company agent. Orange Beach Insurance Agency was the agent of the insured and simply had the right to submit, through the surplus line market, *as a broker*, for issuance or non-issuance, of a surplus lines insurance contract from Lexington Insurance Company to the plaintiff.**

Orange Beach Insurance Agency did not control the contractual terms and conditions of the insurance contract. Orange Beach Insurance Agency simply applied for what

10

available coverages the insured wanted and applied for the monetary amounts applicable to each of these coverages. The company, as is normal in the surplus lines market, would issue a contract over which Orange Beach Agency had no control over the contractual terms of the insurance contract.

At the time of sale and issuance of these insurance contracts to plaintiff, Orange Beach Insurance Agency had every reason to believe that the Lexington Insurance Company would, when a claim was reported, handle the claim pursuant to the terms and conditions of the contract issued to plaintiff. Orange Beach Insurance Agency certainly would expect that the claims would be processed pursuant to the terms and conditions of the insurance contract and would have no reason to inform the plaintiff that Lexington Insurance Company would not pay the claim pursuant to the terms and conditions of the insurance contract, because that was a contract between the plaintiff and Lexington Insurance Company. **The complaint incorrectly references the loss date as 16 September, 2005 and refers to it as Hurricane Katrina. The actual loss date was September 16, 2004 and it was a loss caused by Hurricane Ivan**.

Orange Beach Insurance Agency does not know and would have no way to know or expect that a claim off in the future would be declined or processed not in accord with the terms and conditions of the insurance contract.

(*Id.* (emphasis supplied))

## CONCLUSIONS OF LAW

1.     "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), citing 28 U.S.C. § 1441(a), *abrogated on other grounds by Cohen*

*v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).  Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

2.      "[T]he removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal jurisdiction.").  Therefore, in this case, the burden is on the removing defendant Lexington to establish complete diversity, that is, the plaintiff is diverse from every defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott, supra*, 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified demand

12

for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement.").[3]

    3.    In order to establish complete diversity of citizenship and the removability of this case, Lexington must show that the joinder of the non-diverse party, Orange Beach, was fraudulent. *Tapscott*, 77 F.3d at 1359 ("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent."); *see Sellers v. Foremost Ins. Co.*, 924 F.Supp. 1116, 1117 (M.D.Ala. 1996) ("The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction."). "The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998); *see Brooks v. Paulk & Cope, Inc.*, 176 F.Supp.2d 1270, 1274 (M.D.Ala. 2001) ("A claim of fraudulent joinder must be supported by clear and convincing

---

[3]    Although plaintiff makes no argument in this regard (*see* Doc. 7), the Court would note, as an aside, that in the removal petition Lexington makes a wholly conclusory and unsupported allegation that the amount in controversy element has been met in this matter (*see* Doc. 1, at ¶ 8 ("In her complaint, plaintiff alleges claims for breach of contract, for bad faith and suppression, refusal to pay an insurance claim, negligence, wantonness, seeking unspecified damages which are, **upon information and belief**, in excess of $75,000.00 exclusive of interest and costs.") (emphasis supplied)); the removing party has supplied positively no evidence, much less a preponderance of the evidence, that the amount in controversy in this action more likely than not exceeds the $75,000 jurisdictional requirement.

evidence.").

      4.    "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. Joinder has been deemed fraudulent in three situations in the Eleventh Circuit: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court; and (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id.* The removing party argues that both the first and third fraudulent joinder situation are applicable in this instance. (*See* Doc. 15)

      5.    "'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' . . . The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*,

154 F.3d at 1287 (citation omitted); *see also Pacheco de Perez, supra* ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."); *Bedford v. Connecticut Mut. Life Ins. Co.*, 916 F.Supp. 1211, 1214 (M.D.Ala. 1996) ("'The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous.").

6.     "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to plaintiff and must resolve any uncertainties about state

15

substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," . . ., the jurisdictional inquiry "must not subsume substantive determination." . . . Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538.

7.     "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant.  For a

16

remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

8. During oral argument, Lexington primarily staked its removal of this case on this first fraudulent joinder ground, arguing that there is no possibility that plaintiff can prove a cause of action against the resident non-diverse defendant Orange Beach.[4] In making this argument, Lexington contends that "[t]he allegations against the resident defendant whether couched in negligence, wantonness or suppression, all revolve around whether or not Orange Beach Insurance Agency advised the plaintiff at the time of

---

[4] Lexington's brief in opposition to plaintiff's motion to remand appears to rely more heavily upon fraudulent misjoinder; however, during oral argument Lexington relied primarily upon the first basis for fraudulent joinder.

procurement of the insurance contracts in 2002, 2003 and 2004 that defendant Lexington Insurance Company would not process and pay claims per the conditions and terms of the insurance contracts issued by Lexington[,]" and relies upon fraudulent suppression/concealment cases to establish that plaintiff cannot sustain a claim against Orange Beach (Doc. 15, at 3 & 4). Lexington's arguments in this regard, however, are rejected by this Court. Lexington solely focuses upon the allegations of the complaint related to Orange Beach failing to inform plaintiff that Lexington would not pay her claim[5] to the exclusion of plaintiff's clear allegations that Orange Beach negligently and/or wantonly failed to inform her that she was underinsured in the event "the subject dwelling was destroyed by flood." (Doc. 1, COMPLAINT, at ¶¶ [20] & [24]) Alabama law is clear that "[w]hen an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom." *Lewis v. Roberts*, 630 So.2d 355, 357 (Ala. 1993); *see also Montz v. Mead & Charles, Inc.*, 557 So.2d 1, 4 (Ala. 1987) (same); *Cox v. Pridgen*, 372 So.2d 855, 856 (Ala. 1979) (same); *Crump v. Geer Brothers, Inc.,* 336 So.2d 1091, 1093 (Ala. 1976) (same); *Timmerman Ins. Agency v. Miller*, 285

---

[5] The plaintiff would undoubtedly admit that her allegations in this regard are, at the very least, not very artfully pled.

Ala. 82, 229 So.2d 475, 477 (Ala. 1969).[6] In this case, like in *Crump, supra*, it is clear to the undersigned that the central issue will be whether Orange Beach negligently (and/or wantonly) failed to procure complete and adequate coverage. *Compare* Doc. 1, COMPLAINT, at ¶¶ 20 & 24 *with Crump*, 336 So.2d at 1093. Accordingly, it is apparent to this Court that plaintiff not only has a possibility of stating a valid cause of action against Orange Beach, she in fact has stated a valid negligence claim against the resident defendant under Alabama law.[7]

9.      "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Tapscott, supra,* 77 F.3d at 1360 (citation and footnote omitted).  The Eleventh Circuit

---

[6]      By affidavit, Orange Beach Insurance Agency admits that in its capacity as broker for plaintiff it procured the insurance policy at issue from defendant Lexington. (Doc. 15, Exhibit A, Affidavit of Kevin McCarron)

[7]      This issue is not even a close one. The plaintiff has stated a valid claim under Alabama law against Orange Beach for negligent procurement of insurance and the removing defendant has simply done nothing towards satisfying its heavy burden of establishing this form of fraudulent joinder. What it appears Lexington is trying to get this Court to do is to find that plaintiff has no claim against Orange Beach which a court will ultimately determine to be meritorious; however, whether plaintiff's allegations that Orange Beach negligently (and/or wantonly) failed to procure adequate insurance on her home has ultimate merit is an issue that must necessarily be decided by the state courts of Alabama, not this Court.

made clear in *Tapscott* that it was not holding that "mere misjoinder is fraudulent joinder," but rather, that egregious misjoinder constitutes fraudulent joinder. *Id*.[8]   Therefore, in considering the propriety of joinder in this case, the

---

[8]   The Eleventh Circuit's failure in *Tapscott* to define "egregious misjoinder" as opposed to mere "misjoinder" has left courts in its wake either struggling to define the term, *see, e.g., Ashworth v. Albers Medical, Inc*., 395 F.Supp.2d 395, 410 (S.D. W. Va. 2005) ("In *Conk v. Richards & O'Neil, LLP*., 77 F.Supp.2d 956 (S.D. Ind. 1999), the court defined procedural misjoinder to be: 'a plaintiff's purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard.'"); *see Walton v. Tower Loan of Mississippi*, 338 F.Supp.2d 691, 695 (N.D. Miss. 2004) ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."); *Bright v. No Cuts, Inc.,* 2003 WL 22434232, at *4 n.21 (E.D. La. 2003) ("While the *Tapscott* [c]ourt was clear that 'mere misjoinder' is not equivalent to fraudulent misjoinder, this aspect of the *Tapscott* holding has engendered confusion among courts and commentators alike."); *In re Bridgestone/Firestone, Inc.,* 260 F.Supp.2d 722, 728 (S.D. Ind. 2003) ("[U]nder *Tapscott*, something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been established since."), or rejecting the theory of misjoinder as an inappropriate jurisdictional inquiry, *see, e.g., A. Kraus & Son v. Benjamin Moore & Co.*, 2006 WL 1582193, *5 (E.D. N.Y. 2006) ("What is clear [] is that any finding of egregious misjoinder inevitably clashes with the well-recognized principle that federal courts are courts of limited jurisdiction. . . . And, in the absence of any clear direction from the Supreme Court or Congress, this court is reluctant to extend the jurisdictional confines of the federal courts by wading into the uncharted waters of fraudulent-egregious misjoinder."); *Riddle v. Merck & Co., Inc.*, 2006 WL 1064070, *7 & 8 (S.D. Ill. 2006) ("In the Court's view, whether viable state-law claims have been misjoined-even 'egregiously' misjoined-is a matter to be resolved by a state court. Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims under state procedural rules is a question that implicates the subject matter jurisdiction of a federal court. . . . In sum, just as the Court has refused to follow *Tapscott* in the past . . ., the Court will continue to reject the doctrine of fraudulent misjoinder until such time as it is adopted by the United States Supreme Court or the Seventh Circuit Court of Appeals."); *Osborn v. Metropolitan Life Ins. Co.,* 341 F.Supp.2d 1123, 1127 & 1128 (E.D. Cal. 2004) ("My own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court. . . . In sum, because there appears to

Court need keep in mind that Rule 20(a) of the Federal Rules of Civil Procedure sets forth the following  requirements for permissive joinder of defendants:  "[a]ll persons . . .  may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a).

> [T]he rule "is liberally interpreted in favor of joinder." . . . "[T]here is no strict rule for determining what constitutes the same transaction or series of transactions for purposes of Rule 20(a)." Instead, courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding."

*Atchison v. Woodmen of the World Ins. Soc'y*, 982 F.Supp. 835, 839 (S.D.Ala. 1997) (internal citations omitted).

---

be no reason to develop a fraudulent misjoinder theory, and because of the uncertainty as to how such a theory should be applied, I respectfully decline to apply it."). To say the least, *Tapscott* has been roundly criticized. 14B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 658 (3d ed. 1998) ("[T]he fraudulent-joinder doctrine and its allied jurisprudence adds a further level of complexity–and additional litigation–to a federal court's decision regarding removal jurisdiction. The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and because numerous additional decisions will be needed to clarify the distinction. **In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal.**"); *see Bowling v. Kerry, Inc.,* 406 F.Supp.2d 1057, 1061 (E.D. Mo. 2005) ("Federal courts, of course, could easily avoid this confusing standard if a removing party challenged misjoinder in state court before seeking removal.").

10.     Neither the removing defendant, Lexington, nor Orange Beach, has cited this Court to any case similar to the instant one where a finding of fraudulent misjoinder was made. Rather, the removing defendant Lexington makes the following general and conclusory arguments, which Orange Beach has joined (Doc. 16):

> The claims against Lexington Insurance Company involve the handling of insurance claims under a contract of insurance far subsequent to any events relating to the sale of the insurance. The claims against Orange Beach Insurance Agency make claim only for things that plaintiff claims should have occurred back at the point of sale of the insurance.

> .      .      .

> [A] review of the allegations in plaintiff's complaint under *Rule 20* shows the egregious mis-joinder of plaintiff's claims against Orange Beach Insurance Agency and Lexington Insurance Company in one lawsuit, in an attempt to defeat the diversity jurisdiction of this court over the claims against Lexington Insurance Company. Plaintiff should not be allowed to affect this court's jurisdiction.

(Doc. 15, at 6 & 9) The Court disagrees with the removing defendant's arguments in this regard and find that same take a very myopic view not only of the permissive joinder rule, Fed.R.Civ.P. 20(a), but also of *Tapscott*'s reminder that mere misjoinder does not constitute fraudulent joinder. Even if this Court was to assume, for the sake of argument, that the removing defendant in this case was misjoined with the Alabama defendant, the

removing defendant has simply not satisfied its heavy burden of establishing that the misjoinder was so egregious as to constitute fraudulent joinder. In regard to the Rule 20 permissive joinder requirements, it is apparent that both Lexington and Orange Beach were involved in the sale of the Lexington policy to Bryan and that the occurrence from which plaintiff's claims arose against both defendants was the property loss caused by Hurricane Ivan. In addition, the second requirement of Rule 20 is satisfied because the issue of damages involves questions of fact common to all the parties.[9] In light of the foregoing, the Court finds the claims asserted against the removing defendant and those asserted against Orange Beach logically related thereby allowing those claims to be tried in a single proceeding. In fact, the Court can discern of no legal, factual or commonsense reason why all claims stated by the plaintiff in the instant case should not be tried together.

11.     Lexington, as the removing party, has failed to satisfy its heavy burden of establishing that there exists any species of fraudulent joinder in this case. Accordingly, this Court cannot disregard the citizenship of defendant Orange Beach for purposes of diversity of citizenship and because complete

---

[9]     The Court's discussion of whether the permissive joinder requirements  have been met in this case is not meant to suggest that plaintiff has any burden of proof in this regard; rather, it is meant to highlight that Lexington cannot establish that plaintiff's claims were misjoined, much less egregiously misjoined.

diversity does not exist this case need be remanded to the Circuit Court of Baldwin County, Alabama from whence it came. *See Crowe, supra,* 113 F.3d at 1538 ("This consequence makes sense given the law that 'absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination.'").

### <u>CONCLUSION</u>

Lexington has failed to carry its heavy burden of showing either that the plaintiff has failed to state a claim against Orange Beach (or, otherwise, has no possibility of stating a claim against Orange Beach) or an egregious misjoinder of defendant Orange Beach so as to constitute fraudulent joinder. Accordingly, plaintiff's motion to remand this case to the Circuit Court of Baldwin County, Alabama (Doc. 7) is **GRANTED**.

**DONE** this the 20th day of July, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

24